FILED

02 OCT 10 PM 3:04

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
OCT 10 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| JACQUELINE HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 02-PT-477-M |
| ) | |
| CONTINENTAL CASUALTY ) | |
| COMPANY ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This cause comes on to be heard upon the Parties' cross-Motions for Summary Judgment. Plaintiff Jacqueline Harris ("Mrs. Harris") filed her Motion on July 11, 2002. Defendant Continental Casualty Company ("Continental") filed its Motion on August 6, 2002.

**FACTS AND PROCEDURAL HISTORY**

This case involves an accidental life insurance policy, issued by Continental, that covered Mrs. Harris' husband, Willie Harris ("Mr. Harris"). Mr. Harris died on September 28, 2000. The controversy surrounds the cause of Mr. Harris' death.

At the time of his death, Mr. Harris suffered from a variety of diseases and conditions. Among them, he suffered from diabetes, hypertension, coronary artery disease, peptic ulcer disease, and end-stage renal disease. *See* Def. Ex. 1. The latter condition required Mr. Harris to receive ongoing kidney dialysis. On the morning of September 11, 2000, while driving to dialysis, Mr. Harris was involved in a one-car accident. According to Mrs. Harris, Mr. Harris was driving near Highway 431 in Attalla, Alabama, during the early hours of the morning. Due to a heavy fog, Mr. Harris came upon a stop sign too quickly. Mr. Harris' truck went across the



highway and struck a tree on the other side of the road. *See* Pl. Ex. 12. Mr. Harris was taken to the emergency room at Gadsden Regional Medical Center ("Gadsden Regional"). The records show that as a result of the accident, Mr. Harris suffered compression fractures in his back at L2-L3. Mr. Harris also suffered a subarachnoid hemorrhage. After being treated and released from the emergency room, Mr. Harris went on to his dialysis. However, en route, he began projectile vomiting. Mrs. Harris took Mr. Harris back to Gadsden Regional, and he was admitted that same day.

On September 13, 2000, Dr. Kenny Smith ("Smith") ordered a CAT Scan on Mr. Harris. The CAT Scan revealed an "obvious" subdural hemorrhage. *See* Def. Ex. 1. Because of the severity of the hemorrhage, Mr. Harris was admitted to the intensive care ward. Another scan was performed on September 17, 2000. *See* Def. Ex. 1. This scan revealed the hemorrhage; however, the condition had "improved slightly" since the initial scan. There was no evidence of infarction. Another scan was performed on September 23, 2000, which showed an "improving appearance of intracranial hemorrhage compared to 9/17/00." *See* Def. Ex. 1. The scan also showed that the hemorrhage was "less prominent" than it had been, and that there were no new areas of infarction or extra axial fluid collections. Mr. Harris was released from intensive care on September 26, 2000, although he remained in the hospital. On September 28, 2000, while undergoing a dialysis treatment, Mr. Harris suffered severe hypotension, or loss of blood pressure. The doctors attempted to resuscitate Mr. Harris, but he ultimately died. *See* Pl. Ex. 7; Def. Ex. 1.

On January 20, 2001, Mrs. Harris presented a claim to Continental for accidental death benefits. As support for the claim, she filed (1) an Alabama Uniform Traffic Accident Report,

showing that Mr. Harris had in fact been involved in a car accident on September 11, 2000, (2) the Certificate of Death for Mr. Harris, issued October 19, 2000, (3) an Attending Statement, a form provided by Continental, signed by Smith, (4) a Claimant's Statement, another form provided by Continental, and (5) Mr. Harris' admission and discharge sheets from Gadsden Regional. *See* Pl. Exs. 1-4; 6-7. The Certificate of Death indicated that Mr. Harris' cause of death was "subarachnoid hemorrhage," caused by a "closed head injury" due to a motor vehicle accident. The Attending Statement indicated the cause of death to be a "subarachnoid hemorrhage."

Upon receipt of Mrs. Harris' claim, Continental gathered Mr. Harris' medical records and submitted them to an independent consultant, Dr. LeForce. *See* Def. Ex. 3-4. Dr. LeForce, a neurologist, reviewed the records and concluded that Mr. Harris' prior medical problems were the main cause of his death. *See* Def. Ex. 4. Specifically, he concluded that the subarachnoid hemorrhage was a contributing factor only, and that it would not have caused Mr. Harris' death in the absence of his prior medical conditions. On April 23, 2001, Continental denied Mrs. Harris' claim for accidental death benefits, based upon the medical records and the evaluation by Dr. LeForce. *See* Def. Ex. 5. Continental determined that the head injury did not cause death "directly and independently of all other causes," as required by the plan. *See* Def. Ex. 2 (definition of "injury"). Moreover, Continental noted that the policy excludes death that results from "[s]ickness or disease." *See* Def. Ex. 2 (description of exclusions).

Mrs. Harris appealed the denial and submitted additional documents. First, she filed a consultation report made by Dr. Gary Won Kwon ("Kwon"). *See* Pl. Ex. 5. The report was made on September 11, 2000 while Mr. Harris was at Gadsden Regional. Also, she submitted a

letter from Smith dated August 8, 2001. *See* Pl. Ex. 8. In that letter, Smith opined that it was "highly probable" that Mr. Harris "suffered a rebleed from the original subarachnoid hemorrhage," causing the hypotension that led to his death. Again, Continental sought the opinion of Dr. LeForce. *See* Def. Ex. 6-7. Dr. LeForce determined that, even in light of the new documents, there was no change in his position. *See* Def. Ex. 7. Continental again denied coverage on October 29, 2001, based in part on Dr. LeForce's recommendation. *See* Def. Ex. 8. Mrs. Harris filed another appeal but Continental, based upon another review, denied the claim on December 3, 2001. *See* Def. Ex. 9.

After exhausting her administrative remedies, Mrs. Harris filed suit in the Circuit Court of Etowah County, Alabama. Continental removed the action to federal court on February 22, 2002. Mrs. Harris then filed an amended complaint on March 26, 2002, alleging a wrongful denial of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1132(a)(1)(B).[1] In addition to benefits due under the plan, Mrs. Harris seeks attorney's fees and prejudgment interest at the rate of 18%.[2]

On August 10, 2002, Continental deposed Smith, and subsequently submitted Smith's deposition to the court. In the course of the deposition, Continental elicited several admissions from Smith. First, Smith acknowledged that, as a general matter, any of Mr. Harris' various conditions could eventually have led to his death. *See* Smith Dep. at 12-20. More specifically,

---

[1] Mrs. Harris does not cite 29 U.S.C. § 1132(a)(1)(B), yet, based on the allegations in the complaint, the court assumes that this section is the basis of the lawsuit.

[2] Initially, Mrs. Harris sought accidental death benefits under the policy. After these Motions and Briefs were filed, Mrs. Harris amended her complaint a second time to include a claim for the monthly in-hospital benefit provided for under the policy. It appears to the court that the same definitions and exclusions apply to both sections of the policy, so the court assumes that the arguments made in regards to the accidental death benefits apply also to the in-hospital benefit.

Smith admitted that it was possible that these existing diseases could have caused the hypotension that ultimately killed Mr. Harris. *See* Smith Dep. at 45-46. Ultimately, Smith admitted that without an autopsy or another CAT Scan, neither of which were performed on Mr. Harris, there was no way to determine, to a medical certainty, what exactly caused his death. *See* Smith Dep. at 45-46, 54-55.

Various other motions have also been filed in this case, all of which the court has delayed ruling on until these summary judgment motions were under submission. Mrs. Harris filed a motion objecting to Continental being able to depose Smith. Mrs. Harris also filed a Motion to Strike Smith's deposition. She made the same arguments in both motions. Continental filed a Motion to Strike the Alabama Uniform Traffic Accident Report and the August 8, 2001 letter from Smith.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-

moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

I.  **Mrs. Harris' Motion to Strike**

### Mrs. Harris

Mrs. Harris filed a Motion to Strike, arguing that this court should not consider the deposition of Dr. Smith, taken on August 10, 2002. Specifically, she argues that this deposition is "after acquired evidence," and that this case should be based upon only the information Continental had at the time it denied benefits. To support this proposition, she cites language from *Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321 (11th Cir. 2001). In *Levinson*, the Eleventh Circuit observed that

> Reliance had more than adequate opportunities to establish an administrative record containing evidence contradicting Levinson's evidence pointing to disability on two occasions: when it first considered Levinson's claim and upon Levinson's administrative appeal. Reliance did not do this. It was not until after litigation commenced that Reliance obtained evidence contradicting Levinson's evidence that he was disabled under the policy.

245 F.3d at 1328. The court concluded that "[i]t does not appear that there was a reasonable basis for Reliance's decisions, based on the evidence known to Reliance *at the time it made the decisions.*" *Levinson*, 245 F.3d at 1327 (emphasis added). Mrs. Harris argues that in light of *Levinson*, this court cannot consider Smith's deposition testimony, because Continental did not have this information when it denied benefits.

### Continental

Continental responds that Mrs. Smith's reliance on *Levinson* is misplaced. According to Continental, there are two steps in the court's analysis. First, the court decides whether the administrator's decision was wrong. *HCA Health Servs. of Georgia, Inc. v. Employees Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001). At this stage, a *de novo* review, the court can examine and weigh all admissible evidence. *Kirwan v. Marriot Corp.*, 10 F.3d 784, 789 (11th Cir. 1994). Only after the court has determined that the administrator's decision was wrong does it move on to decide whether the administrator's decision was arbitrary and capricious. *HCA Health Servs.*, 240 F.3d at 993-94. *See also Godfrey v. BellSouth Telecomms., Inc.*, 89 F.3d 755, 758 (11th Cir. 1996); *Levinson*, 245 F.3d at 1326. At this second stage, the record would be limited to the evidence that the administrator had before it. Thus, the court can examine the deposition of Smith, at the *de novo* stage, to see whether Continental's decision was wrong.

7

## II.  Continental's Motion to Strike

### Continental

Continental also filed a Motion to Strike, arguing that the court should strike both the Alabama Uniform Traffic Accident Report, and the August 8, 2001 letter from Smith. Continental notes that under Alabama law, traffic reports are not admissible. *See* Ala. Code § 32-10-11 (1975); *Mainor v. Hayneville Tel. Co.*, 715 So. 2d 800 (Ala. Civ. App. 1997). Thus, Continental argues, they would be inadmissible under Federal Rule of Evidence 402. And since they would be inadmissible at trial, traffic reports cannot be used to support a motion for summary judgment. Fed. R. Civ. P. 56(e) (requiring that affidavits supporting summary judgment be based upon "facts as would be admissible in evidence"). As for Smith's letter, Continental argues that it is hearsay under Federal Rule of Evidence 801 and that it does not meet any of the hearsay exceptions. Moreover, this letter is not an affidavit as required by Federal Rule of Civil Procedure 56. Rather, it is simply an unauthenticated letter, addressed to "whom it may concern," and lacking any oath of affirmation.

### Mrs. Harris

Mrs. Harris counters that this is not a trial on the cause of death of Mr. Harris. Rather, this case is a review of whether Continental made the correct decision to deny benefits based upon the administrative record it had before it. Both the Traffic Report and the August 8, 2001 letter were part of the administrative record. Thus, Mrs. Harris argues, the court can examine these records, to see whether the administrative record as a whole supported Continental's decision.

The court will address the evidentiary issues as trial, but will not base its present decision

on any such rulings.

### III. Summary Judgment Motions

#### Mrs. Harris

Concerning the court's actual summary judgment decision, Mrs. Harris states that the heightened arbitrary and capricious standard of review applies, although she does not specify why.[3] Under this standard of review, Mrs. Harris argues, this court should review Continental's decision and determine whether it was correct based upon the record. Mrs. Harris asserts that Continental's decision was wrong. In support of her position, Mrs. Harris cites several decisions from Alabama case law. For one, she notes that under Alabama law, "when an insurer denies coverage based upon on an exclusionary clause, it bears the burden of proving the applicability of that exclusion." *Jordan v. Nat'l Accident Ins. Underwriters*, 922 F.2d 732, 735 (11th Cir. 1991). Also, Alabama law presumes as true the cause of death stated in the death certificate, although that presumption is rebuttable. *Nat'l Life Ins. Co. v. Reed*, 158 So. 2d 667 (Ala. 1963); *see also Tate v. Gov't Employee's Ins. Co.*, 997 F.2d 1433, 1437 (11th Cir. 1993).[4] Moreover, "considerable latitude must be allowed the jury in determining the question of causation. An insurer cannot escape liability simply by showing that some disease may have contributed to

---

[3] A district court's review of an ERISA plan's denial of benefits under § 1132(a)(1)(B) is *de novo*, unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case the court reviews whether the decision maker acted in an arbitrary or capricious manner. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Consistent with *Firestone*, the Eleventh Circuit has adopted three standards of review under § 1132(a)(1)(B): (1) *de novo*, applicable where the plan administrator has no discretion, (2) arbitrary and capricious (abuse of discretion), where the plan grants discretion to the administrator, and (3) heightened arbitrary and capricious, where the plan grants discretion but the administrator is acting under a conflict of interest. *Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1449 (11th Cir. 1997). Mrs. Harris does not indicate where the conflict of interest lies.

[4] Mrs. Harris argues that this case is very similar to the case in *Tate*, in that there is a question as to whether an accident or a pre-existing illness caused the death. Continental counters that *Tate* is not analogous, because there is no question that Mr. Harris was involved in an accident. Rather, the question is whether the accident caused his death directly and independently of all other causes.

9

some extent to the insured's death." *Tate*, 997 F.2d at 1437; *see also Union Cent. Life Ins. Co. v. Scott*, 236 So. 2d 328 (Ala. 1970).[5]

Finally, Mrs. Harris provides a string of block quotations, standing for such propositions as (1) ambiguities in insurance contracts are construed against the insurer, *Fid. Serv. Ins. Co. v. Jones*, 191 So. 2d 20, 26 (Ala. 1966), (2) proximate cause of death is a question for the jury, *John Hancock Mut. Life Ins. Co. v. McCreary*, 37 Ala. App. 493, 497, 70 So. 2d 817 (Ala. Ct. App. 1954), (3) words in insurance contracts are given their ordinary meaning, *Hairston v. Liberty Nat'l Life Ins. Co.*, 584 So. 2d 807, 809 (Ala. 1991), and (4) if an injury "starts a chain reaction resulting in death, recovery may be had even if one of the links in the chain is old age frailty and some links are dormant diseases or physical conditions without which the chain would be broken." *New York Life Ins. Co. v. McGehee*, 260 F.2d 768, 773 (5th Cir. 1958). In a later brief, Mrs. Harris notes that plaintiffs are entitled to the "reasonable expectation" of their insurance without limitation due to technical definitions. *Lambert v. Liberty Mut. Ins. Co.*, 331 So. 2d 260, 263 (Ala. 1971). While Mrs. Harris' brief does not specifically apply the facts of this case to the law she cites, presumably her position is that all of the evidence, including the unrebutted death certificate, points to the traffic accident as being the cause of Mr. Harris' death. And since insurance contracts are given their plain meaning, construed against the insurer, etc., the evidence shows that Continental made the wrong decision, or at the very least it creates an issue of fact.

---

[5]Continental argues that *Union Central* is distinguishable, because it was decided under the old "scintilla of evidence" rule. Continental notes that under current Alabama law, a party must produce substantial evidence for an issue to reach the jury. *See* Ala. Code § 12-21-12.

10

## Continental

Continental counters that the denial was not based upon any exclusion in the policy, but rather on the fact that Mr. Harris did not die exclusively and independently as a result of the accident. Thus, Mrs. Harris has the burden of proving coverage. *Colonial Life & Accident Ins. Co. v. Collins*, 194 So. 2d 532, 535 (Ala. 1967). Continental also cites the language of the policy, noting that in order to be covered, Mr. Harris must have died as the result of a "bodily injury caused by an accident . . . directly and independently of all other causes." *See* Def. Ex. 2. *See also Union Centr.*, 236 So. 2d at 330 ("[I]f the disease, in cooperation with the accidental injury, is an efficient cause of death, then there can be no recovery for accidental death."). Continental argues that Mrs. Harris has presented no evidence that Mr. Harris died independently of all other causes, including his end-stage renal disease and coronary artery disease. Specifically, Continental argues, the evidence presented by Mrs. Harris is simply conjecture, which cannot be a basis for the court's ruling. *Alabama Power Co. v. Foster*, 555 So. 2d 174 (Ala. 1999); *S. Ry. v. Dickson*, 100 So. 665, 669 (Ala. 1924). Moreover, Continental notes, the cause if death listed on a death certificate is not conclusive. *Union Centr.*, 236 So. 2d at 334. The only evidence submitted by Mrs. Harris that would support finding that the auto accident caused Mr. Harris' death independently of his pre-existing illnesses is the August 8, 2001 letter of Smith. Continental notes that this letter contains mere speculation, a fact which Smith himself confirmed in his later deposition. Moreover, Continental points out that even if the letter is believed, it does not state that Mr. Harris died *independently* of his pre-existing illnesses, as is required by the policy. By contrast, Continental has produced the unrefuted, independent medical evaluations of Dr. LeForce, which conclude that the main cause of Mr.

11

Harris' death was his medical problems. And again, there is the deposition testimony of Smith stating that he cannot say with a medical certainty what caused Mr. Harris' death.[6] Even under cross-examination by Mrs. Harris' attorney, Smith would not say that the subarachnoid hemorrhage caused, to a medical certainty, Mr. Harris' death. Nor was a post-death CAT Scan or autopsy done. Clearly, any prior statement by Smith regarding the cause of Mr. Harris' death was simply conjecture. Thus, Continental argues, it is entitled to summary judgement in its favor.

In the alternative, Continental argues that this case should at the very least proceed to trial. Continental argues that, given the current evidence, there are three possible theories as to Mr. Harris' death: (1) his pre-existing illnesses, (2) his pre-existing illnesses in connection with the auto accident, or (3) Mrs. Harris' speculative theory that it was the auto accident alone. Under Alabama law, when there are two or more plausible theories as to how an event occurred, the court cannot, as a matter of law, select any one theory of causation. *Ex parte Diversity Corp.*, 742 So. 2d 1250, 1254 (Ala. 1999); *S. Ry.*, 100 So. at 669. Thus, Continental argues, even if the court was inclined to believe Mrs. Harris' version of the facts, the case should still proceed to trial because there is more than one plausible theory.

## CONCLUSIONS OF THE COURT

The court concludes that summary judgment for either party would be inappropriate. The parties are to bring to the trial highlighted copies of portions of cases which address the above

---

[6]Mrs. Harris counters with portions of Smith's deposition that she argues supports her position. *See* Pl. Supplemental Mem. In Supp. of Summ. J. at 2-5. Continental argues that Mrs. Harris' reliance on only certain parts of Smith's testimony is disingenuous at best, and borders on outright misrepresentation. Continental also notes that even the portions of Smith's testimony relied upon by Mrs. Harris do not really support her position. *See* Def. Supplemental Mem. In Supp. of Summ. J. at 3-5.

quoted policy language in the context of a person with a weakened physical condition who suffers a violent trauma.

This \_\_10th\_\_ day of October, 2002.

                                                                   ROBERT B. PROPST
                                        SENIOR UNITED STATES DISTRICT JUDGE